Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| Oficina De Permisos Urbanísticos Del Municipio Autónomo De Guaynabo **Recurrida** Vs. Ricardo Rossy Borges **Recurrente** | TA2025RA00349 | *REVISIÓN ADMINISTRATIVA* procedente de la División de Revisiones Administrativas de la OGP Querella Núm. 2025-640356-SDR-302806 SOBRE: Revisión Administrativa |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

El 13 de noviembre de 2025, el Sr. Ricardo Rossy Borges (señor Rossy) y el Sr. Rubén Aponte-Mellado (señor Aponte) (en conjunto, los recurrentes) comparecieron ante nos mediante *Apelación*[1] y solicitaron la revisión de una *Resolución de Revisión Administrativa* que la Oficina de Gerencia de Permisos (OGPe) emitió y notificó el 6 de noviembre de 2025. Mediante el aludido dictamen, la OGPE desestimó la solicitud de revisión administrativa núm. 2025-640356-SDR-302806 por resultar prematura. Además, resolvió que el señor Rossy debía emitir el permiso de construcción con la información correcta y completa, conforme a lo discutido en el proceso de revisión y esbozado por la parte concesionaria, es decir, identificando los dueños de la propiedad según dispuesto en la escritura.

---

[1] Cabe precisar que, el recurso adecuado para atender la Resolución Administrativa recurrida es una revisión judicial. Sin embargo, el recurrente intituló su escrito *Apelación.*

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 9 de julio de 2025, la Sra. Teresa Delgado Díaz, en su capacidad de Oficial de Permisos del Municipio de Guaynabo, y en representación de la Oficina de Permisos Urbanísticos del Municipio Autónomo de Guaynabo (Oficina de Permisos o la recurrida), presentó una *Moción en Solicitud de Revisión Administrativa a la División de Revisiones Administrativas de la OGPE* ante la Oficina de Revisiones Administrativas de la OGPe.[2] Alegó que, el Profesional Autorizado (PA) y PE, el señor Rossy, expidió un Permiso de Construcción en el caso núm. 2025-622445-PCOC-316742, con fecha del 6 de mayo de 2025, a través del Single Business Portal (SBP), a favor del señor Aponte. Sostuvo que el permiso fue otorgado para la construcción de una terraza y la ampliación de una vivienda ubicada en el municipio de Guaynabo. Indicó que, dicho permiso fue expedido en violación a varias disposiciones legales y reglamentarias aplicables.

Particularmente, argumentó que, el recurrente autorizó el permiso de manera ministerial, en contravención al Art. 7.1 de la Ley Núm. 161-2009, según enmendada, conocida como *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9017 (Ley Núm. 161-2009), y a la Sección 2.3.1.2(a) del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* que se aprobó el 16 de junio de 2023 (Reglamento Conjunto), ya que la construcción propuesta no cumplía con los parámetros de construcción vigentes. Indicó que, el permiso debió tramitarse mediante una consulta de construcción ante la Oficina de Permisos,

---

[2] *Véase*, Entrada Núm. 1 del apéndice del recurso, SUMAC TA.

al tratarse de una solicitud de variación en el patio lateral derecho. Señaló que, conforme al plano y al memorial explicativo sometidos, se autorizó una expansión de garage adyacente a la colindancia lateral, con un área de 145.27 pies cuadrados, ancho variable de 7'-8" a 10'-7", largo de 14'-11" e incluyendo un closet de cuarenta (40) pulgadas de ancho.

Adujo que, la ampliación autorizada no cumplía con múltiples disposiciones del Reglamento Conjunto relativas a marquesinas. Entre estas citó las secciones que establecen los requisitos mínimos de ancho y largo del espacio de estacionamiento, las condiciones para el cierre frontal y posterior de la marquesina, las restricciones sobre ventanas cercanas a la colindancia lateral, la obligación de mantener acceso al patio posterior y las limitaciones sobre la ubicación y dimensiones de closets dentro de la marquesina. A base de las secciones citadas afirmó que la construcción propuesta incumplía con las medidas mínimas requeridas y al cerrar tanto la parte frontal como la posterior de la estructura.

Asimismo, alegó que, el recurrente incumplió con su deber legal de notificar al Municipio Autónomo de Guaynabo la radicación de la solicitud de permiso dentro del término de veinticuatro (24) horas. Señaló que, la solicitud fue radicada y pagada el 17 de junio de 2025, pero el municipio no fue notificado oportunamente, sino luego de haberse expedido el permiso, mediante correo electrónico enviado el 24 de junio de 2024 a las 9:12 p.m.

Puntualizó que, conforme al SBP, la radicación de la solicitud, el pago de los aranceles, el costo de radicación y los sellos del CIAPR se realizaron el 17 de junio de 2024. No obstante, indicó que el señor Rossy generó el permiso el 24 de junio de 2025 y que este fue expedido con fecha del 6 de mayo de 2025, es decir, con una fecha anterior a la radicación. Argumentó que ello constituyó una

violación al Art. 8.4(b) y (c) de la Ley Núm. 161-2009, 23 LPRA sec. 9018c y a la Sección 20.1.9.2(v) y (w) del Reglamento Conjunto.

Por los motivos antes expuestos, pidió que la solicitud de revisión administrativa fuese atendida en sus méritos conforme a la Regla 11.1.2 del Reglamento Conjunto, que se señalara con urgencia una vista administrativa, que se revocara y declarara nulo el Permiso de Construcción expedido en el caso de autos y que el asunto fuese referido a la División de Regulación Profesional de la OGPE, a la División de Auditorías de la Junta de Planificación y al Colegio de Ingenieros y Agrimensores de Puerto Rico para las acciones correspondientes.

En respuesta, el 11 de julio de 2025, los recurrentes, la Sra. Nicole Hernández García (señora Hernández) y el Sr. Alexis Santiago Rivera (señor Santiago) presentaron su *Oposición a: Moción en Solicitud de Revisión Administrativa a la División de Revisiones Administrativas de la OGPE* sin someterse a la jurisdicción de la OGPE.[3] Sostuvieron que, la Sección 11.1.2.8 del Reglamento Conjunto le concedía a la recurrida un término de cinco (5) días para presentar su alegato, término que la Oficina de Permisos no utilizó para presentar evidencia alguna que rebatiera la presunción de legalidad y corrección del Permiso. Asimismo, plantearon que la recurrida incumplió con la Sección 11.1.2.7 del Reglamento Conjunto, la cual establece los criterios bajo los cuales procede considerar una revisión administrativa, incluyendo el descubrimiento de nueva evidencia esencial, la comisión de un error sustantivo o procesal, o la necesidad de proteger mejor el interés público. Puntualizaron que ninguna de dichas circunstancias estaba presente en este caso, por lo que procedía rechazar de plano la solicitud de revisión.

---

[3] *Véase*, Entrada Núm. 3 del apéndice del recurso, SUMAC TA.

En cuanto a los señalamientos en contra del señor Rossy, argumentaron que eran incorrectos. Indicaron que el requisito legal era notificar al Municipio dentro de las veinticuatro (24) horas de emitido el permiso y no de la radicación, y que dicha notificación se realizó seis (6) minutos después de que el SBP generara el Permiso. De igual forma, sostuvieron que era incorrecto alegar que el Permiso fue emitido con fecha anterior a la radicación, ya que el SBP reflejaba como fecha del permiso la de la notificación original y no la de su generación efectiva, práctica conocida por los PA y por las oficinas de permisos municipales.

Respecto a la alegada ilegalidad de la expansión de la marquesina, expresaron que la Oficina de Permisos se limitó a citar varias disposiciones del Reglamento Conjunto sin análisis jurídico alguno. Indicaron que, esta última analizó la expansión como si fuera una estructura separada, en lugar de evaluarla como parte integral de una sola marquesina, con el propósito de concluir incorrectamente que no cumplía con el reglamento. Aseguraron que, la marquesina cumplía con los requisitos de ancho mínimo, ya que disponía de 25.6 pies para estacionamiento, superando el mínimo de diez (10) pies requeridos. Asimismo, indicaron que cumplía con el requisito de longitud mínima de veinte (20) pies, al tener una longitud de 20.6 pies. Señalaron que, el espacio adicional permitía el estacionamiento de vehículos según la definición reglamentaria de "vehículo". Asimismo, sostuvieron que el Permiso no contemplaba portones ni ventanas, que el cierre posterior estaba permitido por el reglamento y que la vivienda mantenía acceso al patio posterior por un área distinta a la marquesina.

Por otro lado, manifestaron que del Permiso no surgía intención de destinar la marquesina a usos distintos al estacionamiento, y que la instalación de un closet cumplía con el límite máximo permitido sin afectar el espacio mínimo requerido

para estacionar vehículos. En consecuencia, concluyeron que la actuación del señor Rossy fue de carácter ministerial, no requirió discreción ni consulta de construcción, y se ajustó a las disposiciones del Reglamento Conjunto.

Finalmente, reiteraron que la Oficina de Permisos no logró rebatir la presunción de legalidad y corrección del Permiso reconocida por la Ley Núm. 161-2009, *supra*, y que la impugnación adolecía de defectos procesales insubsanables. Por ello, solicitaron que el recurso de revisión administrativa fuese denegado de plano por no cumplir con el estado de derecho vigente.

Posteriormente, el 14 de julio de 2025, los recurrentes, la señora Hernández y el señor Santiago presentaron una *Solicitud de Desestimación por Falta de Jurisdicción* sin someterse a la jurisdicción de la OGPE.[4] Indicaron que, la Sección 11.1.2.4 del Reglamento Conjunto disponía que la parte recurrente debía utilizar el Sistema Unificado de Información (SUI) para presentar electrónicamente un recurso de revisión administrativa ante la División de Revisiones Administrativas, notificando simultáneamente a la OGPe, a la Junta Adjudicativa, a los municipios autónomos con jerarquía de la I a la III o al Profesional Autorizado, según corresponda. Además, sostuvieron que, la referida sección establecía que la parte recurrente debía notificar copia de la solicitud de revisión administrativa a las demás partes y a los interventores, ya fuese por correo postal, correo electrónico o personalmente, dentro de un término de cuarenta y ocho (48) horas desde su presentación.

De igual forma, señalaron que dicha notificación oportuna constituía un requisito de carácter jurisdiccional, cuyo cumplimiento debía certificarse y evidenciarse ante la División de

---

[4] *Véase*, Entrada Núm. 4 del apéndice del recurso, SUMAC TA.

Revisiones Administrativas. Añadieron que cuando la notificación se realizaba por correo certificado, debía cargarse al sistema los acuses de recibo dentro de los cinco (5) días de haberlos recibido; y cuando se notificara por correo regular, electrónico o personalmente, el recurrente debía certificar la notificación y cargar dicha certificación al expediente dentro de los cinco (5) días de realizada.

Expresaron que según surgía de los Exhibits 1 y 2 y del expediente del Permiso, la residencia objeto del presente caso, que gozaba del Permiso impugnado, pertenecía al señor Aponte, su esposa, la señora Hernández y a la Sociedad Legal de Bienes Gananciales compuesta por ambos. No obstante, alegaron que la Oficina de Permisos no notificó a la señora Hernández, quien era una de las cesionarias del Permiso y propietaria del inmueble sobre el cual recae. Ante ello, indicaron que los intereses de la señora Hernández estaban directamente afectados por cualquier determinación que emitiera la OGPe.

Particularmente, argumentaron que la falta de notificación vulneraba el derecho al debido proceso de ley garantizado por el Art. II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico, que exigía la protección de los derechos propietarios. Señalaron que, en el ámbito administrativo, el debido proceso comprendía la concesión de una vista previa, la notificación adecuada y oportuna, el derecho a ser oído, a confrontar testigos, a presentar prueba oral y escrita, y la intervención de un adjudicador imparcial, conforme lo establecía *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232 (2007). A base de lo anterior, sostuvieron que la OGPe carecía de jurisdicción para atender el caso.

Por otro lado, plantearon que la Oficina de Permisos carecía de autoridad para haber radicado el presente caso *pro se.* Expresaron que resultaba problemático y perjudicial para los intereses de los contribuyentes que empleados municipales no

licenciados en derecho incoaran pleitos y formularan alegaciones en foros cuasi-judiciales fuera de su municipio. Indicaron que, aunque los municipios tenían autoridad para instar pleitos sobre asuntos de permisos, ello no implicaba que un empleado municipal pudiese alegar contra terceros sin ser abogado.

Específicamente, expusieron que la figura de Oficial de Permisos, creada por la Ley Núm. 161-2009, *supra*, y definida en el Reglamento Conjunto, *supra*, tenía funciones técnicas y administrativas, pero no existía disposición legal que le autorizara a instar pleitos ni a formular alegaciones jurídicas en representación del municipio. Por ello, concluyeron que la comparecencia del Municipio por conducto de un lego, y no de un abogado autorizado por el Tribunal Supremo, privaba a la OGPE de jurisdicción para atender el caso.

El 16 de julio de 2025, la Oficina de Permisos presentó una moción solicitando autorización para que se le permitiera a la Lcda. Heidi Medina Cordero asumir su representación legal.[5] El 22 de julio de 2025, la OGPE emitió y notificó una *Notificación Acogiendo Solicitud de Revisión Administrativa* en la cual le concedió un término a la recurrida para presentar su posición en cuanto a la solicitud de desestimación presentada.[6]

Así pues, el 24 de julio de 2025, la Oficina de Permisos presentó una *Moción en Cumplimiento de Orden*.[7] Alegó que sí se cumplió con los requisitos de notificación oportuna y adecuada, ya que la Solicitud de Revisión Administrativa fue presentada y notificada conforme a la información que constaba en el perfil del permiso en SBP. Señaló que, dicho perfil fue preparado por el señor Rossy, quien incluyó como único concesionario al señor Aponte.

---

[5] *Véase*, Entrada Núm. 6 del apéndice del recurso, SUMAC TA.
[6] *Véase*, Entrada Núm. 7 del apéndice del recurso, SUMAC TA.
[7] *Véase*, Entrada Núm. 11 del apéndice del recurso, SUMAC TA.

Sostuvo que del perfil del SBP, creado el 13 de marzo de 2025, en el área destinada a los datos del solicitante, el señor Rossy consignó exclusivamente al señor Aponte, incluyendo su número telefónico, dirección de correo electrónico y dirección física. De igual forma, expresó que, al detallar los datos del proyecto, se indicó que tanto el dueño del proyecto como el dueño del solar era únicamente el señor Aponte. Aseguró que esa misma información constaba en la Exclusión Categórica expedida por la OGPe y en el permiso emitido por el propio señor Rossy, en los cuales se identificaba al señor Aponte como dueño del proyecto.

En virtud de lo antes expuesto, indicó que, conforme a lo dispuesto en el Art. 11.7 de la Ley Núm. 161-2009, *supra*, y en la Sección 11.1.2.4 del Reglamento Conjunto, notificaron la solicitud de revisión administrativa a las partes informadas por el propio señor Rossy en el perfil del caso, a saber: el PA, el proyectista y el concesionario, el señor Aponte. Insistió que ni la información de la señora Hernández García ni de la Sociedad Legal de Gananciales surgía del expediente del SBP, por lo que la notificación se efectuó conforme a los datos oficialmente consignados.

Añadió que la jurisprudencia del Tribunal Supremo reconocía que la notificación a una parte afectada podía realizarse directamente o por conducto de su representante designado, y que ambas modalidades satisfacían el debido proceso de ley. Para respaldar este argumento citó el caso de *Román Ortiz v. OGPe*, 203 DPR 947 (2020) en el cual se establece que, al autorizar un agente o representante, el dueño queda vinculado por las actuaciones de este, de modo que la notificación al representante se entiende hecha tanto a este como a la parte representada.

En ese contexto, explicó que el Reglamento Conjunto permitía que los trámites ante la OGPe se realizaran por el dueño o a través de su representante autorizado, siempre que dicho representante

hubiese sido designado mediante autorización expresa, escrita y firmada. Puntualizó que, en el presente caso, surgía del expediente que el señor Santiago fue designado como representante mediante carta firmada por el señor Aponte y por la señora Hernández el 6 de febrero de 2025, cumpliéndose así con los requisitos reglamentarios. Ante ello, indicó que la revisión administrativa fue notificada al señor Santiago a través del correo electrónico provisto, por lo que la notificación se realizó conforme al mecanismo autorizado.

En cuanto a la alegación de que la Oficial de Permisos carecía de autoridad para comparecer e instar trámites ante la OGPe, sostuvo que dicho planteamiento era incorrecto. Explicó que, conforme al Código Municipal de Puerto Rico, la Oficina de Permisos tenía la responsabilidad legal de velar por el cumplimiento del Plan de Ordenación Territorial y de su reglamentación, así como de aplicar e implementar el Convenio de Transferencias de Facultades otorgado por la Junta de Planificación y la OGPe al Municipio Autónomo de Guaynabo mediante convenio suscrito el 26 de diciembre de 2012.

Indicó que dicho convenio establecía que el municipio ejercería las facultades transferidas para promover el bienestar social y económico de la población y alcanzar los objetivos de la ordenación territorial. A tono con esa política pública, expresaron que, el Código Municipal disponía que la Oficina de Permisos debía tramitar solicitudes de autorizaciones y permisos, mantener expedientes, celebrar vistas públicas y promover el inicio de acciones legales, tanto administrativas como judiciales, para procesar violaciones relacionadas con las facultades transferidas. Además, manifestaron que dicho estatuto establecía que el municipio estaría autorizado a incoar recursos legales concernidos, representado por el alcalde o por cualquier funcionario designado

por este para atender y procesar querellas sobre violaciones de uso y construcción.

En vista de lo anterior, insistió que no instó un procedimiento judicial independiente, sino que incoó la revisión administrativa de conformidad con las facultades delegadas y con el ordenamiento jurídico aplicable. Concluyó que las disposiciones legales citadas reconocían de manera clara la autoridad de la Oficina de Permisos y de la Oficial de Permisos, como funcionaria designada por el alcalde y confirmada por la Legislatura Municipal, para iniciar acciones administrativas y judiciales relacionadas con las competencias transferidas.

En respuesta, ese mismo día, a saber, el 24 de julio de 2025, los recurrentes, la señora Hernández y el señor Santiago presentaron una *Réplica a Moción en Cumplimiento de Orden* sin someterse a la jurisdicción de la OGPE.[8] En esta, sostuvo que la carta de autorización suscrita por el señor Aponte y la señora Hernández, fue otorgada exclusivamente para que el proyectista pudiera radicar la documentación necesaria para la obtención del Permiso en el caso núm. 2025-622445-PCOC-316742. Expresaron que, en dicha carta no se autorizó al señor Santiago a representar a los dueños en procesos cuasi-judiciales ulteriores ante la OGPe ni a comparecer en procedimientos instados por terceros. Indicaron que la autorización se limitaba expresamente a la presentación de documentos para la obtención del permiso y no abarcaba actuación alguna adicional.

Argumentaron que el caso de *Román Ortiz v. OGPe*, supra, citado por la Oficina de Permisos, trataba exclusivamente sobre la forma correcta de notificar los dictámenes emitidos por una agencia administrativa en procedimientos adjudicativos. Puntualizaron que,

---

[8] *Véase*, Entrada Núm. 12 del apéndice del recurso, SUMAC TA.

en ese caso, el Tribunal Supremo resolvió que, cuando una agencia tenía información que le permitiera conocer que sus intentos de notificación habían resultado infructuosos, estaba obligada a realizar esfuerzos adicionales razonables para notificar a la parte interesada, conforme a las circunstancias particulares de cada caso.

Particularmente explicaron que, surgía de los hechos de *Román Ortiz v. OGPe*, supra, que el peticionario autorizó por escrito a un agrimensor a presentar una querella ante la OGPe en un caso específico del año 2015. Sin embargo, en un procedimiento distinto iniciado en 2016, el peticionario compareció por derecho propio como parte interventora. Indicaron que, ambos casos eran independientes y, aunque el agrimensor fungió como representante en el primer caso, no lo fue en el segundo. Por ello, sostuvieron que el Tribunal Supremo rechazó el argumento de la OGPe de que la notificación al ingeniero constituía una notificación válida al peticionario en el segundo procedimiento.

En virtud de lo anterior, sostuvieron que, al radicar el caso núm. 2025-640356-SDR-302806, la Oficina de Permisos estaba obligada a cumplir con los requisitos de debido proceso de ley establecidos en el Art. 11.7 de la Ley 161-2009, *supra*, y en la Sección 11.1.2.4 del Reglamento Conjunto, *supra*, independientemente de la existencia de una autorización previa al proyectista en el trámite del permiso. Argumentaron que pretender atribuirle al proyectista facultades representativas en este procedimiento era contrario a la Constitución y a la jurisprudencia del Tribunal Supremo, ya que los dueños nunca lo autorizaron a representarlos en el presente caso.

En cuanto a la alegación de representación *ultra vires*, distinguieron entre la facultad de representar a una persona jurídica, como lo es un municipio, y la capacidad de alegar como abogado en un procedimiento adjudicativo. Reconocieron que la ley

facultaba al alcalde o a su representante a comparecer en nombre del municipio, pero sostuvieron que dicha facultad no equivalía ni sustituye la representación legal propia del ejercicio de la abogacía, tratándose de dos tipos de representación distintos.

Finalmente, expresaron que lo que no era correcto que la Oficina de Permisos intentara tergiversar la jurisprudencia del Tribunal Supremo para justificar actuaciones que vulneraban derechos constitucionales de los contribuyentes. Concluyeron que el derecho constitucional al debido proceso de ley tenía el rango más alto y que, en este caso, la falta de notificación a una parte, en este caso la señora Hernández, constituía un defecto procesal insubsanable que conllevaba la desestimación del procedimiento administrativo.

El 17 de septiembre de 2025, la OGPe emitió un *Señalamiento de Vista de Revisión Administrativa.*[9] Allí señaló una vista administrativa para celebrarse el 2 de octubre de 2025. Además, expresó lo siguiente:

> [S]e prorroga el término de noventa (90) días por un periodo de treinta (30) días adicionales, de conformidad al Conforme al Artículo 11.8 de la Ley 161-2009, Según enmendada, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico" y del Reglamento Conjunto para la Evaluación y Expedición de Permisos relacionados al Desarrollo, Usos de Terrenos y Operación de Negocios, vigente. Dicha determinación en consideración a la cantidad de casos atendidos en la División. Esta prórroga garantiza que se emita la correspondiente Resolución que adjudique solicitud.

Así las cosas, el 18 de septiembre de 2025, los recurrentes, la señora Hernández y el señor Santiago presentaron una *Moción Reiterando la Solicitud de Desestimación y Solicitando Suspensión de la Vista.*[10] En síntesis, reiteraron los mismos argumentos de su solicitud de desestimación original y solicitaron la cancelación de la

---

[9] *Véase*, Entrada Núm. 13 del apéndice del recurso, SUMAC TA.
[10] *Véase*, Entrada Núm. 15 del apéndice del recurso, SUMAC TA.

vista señalada ya que la falta de jurisdicción era un planteamiento que se debía atender *prima facie.*

La vista administrativa fue suspendida. Posteriormente, el 7 de octubre de 2025, la OGPe emitió una *Orden* mediante la cual le ordenó a la misma OGPe a presentar su postura en cuanto a la solicitud de desestimación presentada.[11] Asimismo, le ordenó al señor Rossy a que contratara una representación legal distinta a la del titular de la propiedad objeto de esta controversia y que también se expresara en cuanto a la solicitud de desestimación.

En cumplimiento con la referida Orden, las partes presentaron sus posturas en cuanto a la solicitud de desestimación. Particularmente, la OGPe repitió los mismos argumentos que la Oficina de Permisos.[12] Por su parte, el señor Rossy compareció mediante una nueva representación legal y reiteró los argumentos presentados en la solicitud de desestimación del 14 de julio de 2024.[13]

Evaluadas las posturas de las partes, el 6 de noviembre de 2025, la OGPe emitió y notificó una *Resolución de Revisión Administrativa.*[14] En primer lugar, realizó unas determinaciones de hechos. Luego, conforme a estas, la prueba documental que obra en el expediente y el derecho aplicable resolvió, en lo pertinente, lo siguiente:

> Ahora bien, de las Determinaciones de Hecho se desprende que, como parte de la documentación que está contenida en el expediente de la solicitud de permiso de construcción consolidado 2025-622445-PCOC-316742, obra una escritura de compraventa que identifica como dueños de la propiedad objeto del antes mencionado permiso a Aponte Mellado y Hernández García. Asimismo, del expediente digital podemos observar la Carta de Autorización con fecha del 6 de febrero de 2025, la cual fue firmada por ambos, entiéndase, tanto Aponte Mellado como Hernández García, en la que autorizaban al Ing. Alexis M. Santiago Rivera como proyectista. Sin embargo y

---

[11] *Véase,* Entrada Núm. 16 del apéndice del recurso, SUMAC TA.
[12] *Véase,* Entrada Núm. 17 del apéndice del recurso, SUMAC TA.
[13] Íd.
[14] *Véase,* Entrada Núm. 2 del apéndice del recurso, SUMAC TA.

contrario a estos documentos, el pergamino de permiso 2025-622445-PCOC-316742, generado por el profesional autorizado, estipula y establece que el dueño (s) es el Sr. Rubén T Aponte, también en el Single Business Portal (SBP), la información entrada establece como Dueño del Proyecto a Rubén T Aponte y como Dueño del Solar a Rubén Aponte. Este hecho es de fácil corroboración, con solo entrar al expediente de la solicitud.

Aunque como establecimos, en el documento generado por el Profesional Autorizado no se desprende que la Lcda. Hernández García es también dueña del solar y del proyecto lo cierto es que en el expediente digital del caso 2025-622445-PCOC-316742 obra documentación que establece que el matrimonio es dueño de la residencia.

En cuanto a la alegación del Municipio en la que expresa que se cumplió con el deber de notificar adecuadamente a Hernández García al haber notificado el recurso de revisión al proyectista, conforme estableció el Tribunal Supremo de Puerto Rico en Román Ortiz v. OGPe, 203 DPR 947 (2020), no procede. Conforme resuelto en dicho caso, el proyectista representa a los dueños de un proyecto, mientras se lleva a cabo el proceso de evaluación y emisión de un permiso. Tal representación no se extiende automáticamente a los procedimientos cuasijudiciales, como lo sería una revisión administrativa, Como recordaremos, quienes únicos tienen la capacidad de representar ente un foro administrativo o judicial son los profesionales del derecho que han sido debidamente admitidos a llevar a cabo la práctica de la abogacía.

Como consecuencia, cualquier acción que se lleve a cabo para impugnar el permiso de construcción 2025-622445-PCOC-316742 afectaría, adversamente, tanto a Aponte Mellado como a Hernández García. Dicho lo anterior, nos es forzoso resolver que, conforme a la definición de parte establecida en la LPAU en su sección 1.3, Hernández García es parte n el caso 2025-640356-SDR-302806.

Asimismo, la LPAU requiere que, en un procedimiento adjudicativo formal, como lo es la revisión administrativa 2025-640356-SDR-302806, se envíe una notificación oportuna de cualquier reclamo en contra de una parte, en este caso de Hernández García. Ahora bien, de las Determinaciones de Hecho no se desprende que la MOCIÓN EN SOLICITUD REVISIÓN ADMINISTRATIVA A LA DIVISIÓN DE REVISIONES ADMINISTRATIVAS DE LA OGPE, presentada por la Oficial de Permisos del Municipio el 9 de julio de 2025, haya sido notificada, oportunamente; a Nicole Hernández García

Ahora bien, la omisión del nombre de uno los dueños de una propiedad en un documento legal, como lo es un permiso, no es un simple error formal; constituye una

deficiencia sustantiva que puede afectar la madurez de la controversia y vulnerar el debido proceso de ley. La teoría de madurez exige que la controversia presentada ante los distintos foros esté suficientemente desarrollada, con hechos concretos y partes claramente identificadas. Si el documento objeto de revisión no incluye a todos los titulares del derecho real involucrado, la controversia carece de la concreción necesaria para ser adjudicada de manera justa y completa. Tal y como estableciéramos en las Determinaciones de Hecho, el permiso 2025-622445-PCOC-316742, establece de forma fehaciente que el dueño (s) lo es Rubén T Aponte, a pesar de que el sistema permite la inclusión de varios nombres en dicho campo.

En síntesis, la falta de claridad en la redacción del documento -específicamente la omisión del nombre de uno de los titulares del proyecto y la propiedad— no solo compromete la integridad del proceso, sino que impide que este foro pueda ejercer jurisdicción plena sobre la controversia. Esta deficiencia debe ser corregida antes de que el caso pueda considerarse maduro y justiciable, conforme a los principios constitucionales que rigen el debido proceso de Ley en Puerto Rico.

Como es sabido, la jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos o controversias. Gearheart v. Haskell, 87 D.P.R. 57, 61 (1963). Nos toca a los tribunales el deber de ser guardianes de nuestra propia jurisdicción. Gobernador de P.R. v. Alcalde de Juncos, 121 D.P.R. 522, 530 (1988); Soc. de Gananciales v. Autoridad de Fuentes Fluviales, 108 D.P.R. 644, 645 (1979); López Rivera v. Autoridad Fuentes Fluviales, 89 D.P.R. 414, 419 (1963). También es asunto trillado que los tribunales no tenemos discreción para asumir jurisdicción donde la ley no nos la da. Martínez v. Junta de Planificación, 109 D.P.R. 839, 842 (1980); Maldonado v. Pichardo, 104 D.P.R. 778, 782 (1976). Es por esta razón que cuando un tribunal no está autorizado para considerar y decidir un caso o controversia, carece de jurisdicción y cualquier actuación suya es nula. En tal instancia, el tribunal tiene el deber de abstenerse de considerar los méritos de la controversia planteada. Brunet Justiniano v. Gobernador de P.R., 130 D.P.R. 248, 255 (1992). Brunet Justiniano v. Gobernador de P.R., 130 D.P.R. 248, 255 (1992).

En atención a la prueba obrante en los expedientes digitales de los casos 2025-622445-PCOC-316742 y 2025-640356-SDR-302806 relacionados a esta solicitud de revisión administrativa, la vista celebrada el 2 de octubre de 2025, así como las disposiciones legales y reglamentarias aplicables, este foro se ve obligado a reconocer que la omisión del nombre de Nicole Hernández García en el permiso de construcción 2025-622445-PCOC-316742 constituye una falla sustantiva que afecta directamente la madurez de la controversia y compromete el cumplimiento del debido proceso de ley. Este hecho, evitó a su vez que Hernández

García fuera notificada del recurso de revisión administrativa por parte del Municipio. Et haber notificado al ingeniero proyectista no subsana esta debida notificación, conforme resuelto por el Tribunal Supremo en Román Ortiz v. OGPe, supra. Al no haber sido notificada oportunamente, conforme exige la LPAU en procedimientos adjudicativos formales, se le ha privado de la oportunidad de ejercer sus derechos como parte legítima en el caso 2025-640356-SDR-302806. Esta omisión no solo impide que la controversia esté suficientemente desarrollada para ser adjudicada, sino que también coloca a este Foro en una posición en la que carece de jurisdicción para resolver sobre los méritos y alegaciones presentadas por la parte Recurrente. Tal como ha reiterado el Tribunal Supremo de Puerto Rico, los tribunales ni los foros administrativos pueden asumir jurisdicción donde la ley no la concede, y cualquier actuación en ausencia de esta autoridad es nula. Por tanto, antes de que este foro pueda considerar los méritos de la controversia, es imperativo corregir la deficiencia documental y garantizar que todas las partes afectadas sean debidamente incluidas y notificadas, en estricto cumplimiento con los principios constitucionales que rigen nuestra función adjudicativa.

Por los motivos antes expuestos, desestimó la solicitud de revisión administrativa núm. 2025-640356-SDR-302806 por resultar prematura. Además, resolvió que el señor Rossy debía emitir el permiso de construcción con la información correcta y completa, conforme a lo discutido en el proceso de revisión y esbozado por la parte concesionaria, es decir, identificando los dueños de la propiedad según dispuesto en la escritura.

En desacuerdo con este dictamen, el 13 de noviembre de 2025, los recurrentes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

**ERRÓ LA OGPE Y ACTUÓ SIN JURISDICCIÓN AL RESOLVER EL RECURSO DE REVISIÓN PRESENTADO POR EL MUNICIPIO DE GUAYNABO FUERA DE LOS 90 DÍAS JURIDICCIONALES.**

**ERRÓ LA OGPE Y ACTUÓ SIN JURISDICCIÓN, AL DETERMINAR QUE EL RECURSO DE REVISION ES PREMATURO PARA CONCEDERLE UNA NUEVA OPORTUNIDAD AL MUNICIPIO PARA PRESENTAR SU RECURSO CUANDO LA DESESTIMACIÓN, NO ES ASUNTO SUBSANABLE, POR INCUMPLIMIENTO CON LA OBLIGACIÓN JURISDICCIONAL DE NOTIFICACIÓN.**

**ERRÓ LA OGPE Y ACTUÓ SIN JURISDICCIÓN AL ORDENAR AL PROFESIONAL AUTORIZADO A INCLUIR A LA COPROPIETARIA EN EL PERMISO CUANDO DESESTIMO EL RECURSO DE REVISION. DICHA ORDEN SE CONSIDERA UNA ACTUACION ULTRAVIRES DE LA OGPE.**

Atendido el recurso, el 2 de diciembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 11 de diciembre de 2025 para presentar su postura en cuanto al recurso. En cumplimento con nuestra orden, el 9 de diciembre de 2025, la OGPE presentó su *Oposición a Recurso de Revisión Judicial.* Por su parte, el 11 de diciembre de 2025, la Oficina de Permisos presentó su *Moción en Oposición a Revisión Judicial.* Tanto la OGPE como la Oficina de Permisos negaron que se cometieran los errores que el señor Rossy formuló. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nos. *Veamos.*

II.

**-A-**

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra*, pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

La Sección 11.1.2.6 del Reglamento Conjunto, establece que, una vez presentada una solicitud de revisión administrativa, el Juez Administrativo o el Juez Administrativo Alterno cuenta con un término de quince (15) días para acogerla o tomar acción inicial. Si la solicitud es acogida, la División de Revisiones Administrativas deberá adjudicarla dentro de un término de noventa (90) días naturales desde su presentación, término que podrá prorrogarse por treinta (30) días adicionales en casos excepcionales. Íd. De no emitirse una adjudicación dentro de ese término, la División pierde jurisdicción sobre la solicitud y comienza a transcurrir el término de

treinta (30) días para recurrir al Tribunal de Apelaciones mediante recurso de revisión judicial. Íd.

Asimismo, el Art. 11.8 de la Ley Núm. 161-2009, 23 LPRA sec. 9021t, dispone que la División de Revisiones Administrativas debe adjudicar las solicitudes acogidas dentro de un término de noventa (90) días naturales desde su presentación, prorrogable por treinta (30) días adicionales en casos excepcionales. Si no emite una determinación dentro de ese término, pierde jurisdicción y comienza a transcurrir el término de treinta (30) días para recurrir al Tribunal de Apelaciones. Íd. Las resoluciones que emita la División constituyen determinaciones finales de la Oficina de Gerencia de Permisos. Íd.

**-C-**

La jurisdicción es la autoridad que posee un Tribunal o una agencia administrativa para considerar y adjudicar una determinada controversia o asunto. *Pérez López y otros v. CFSE*, 189 DPR 877, 882 (2013). Así pues, las controversias jurisdiccionales deben resolverse con carácter preferente y, de carecer una agencia administrativa de jurisdicción, su única actuación válida es declararlo y abstenerse de continuar con el trámite. Íd., pág. 883. Es decir, cuando una agencia administrativa carece de jurisdicción, debe desestimar la reclamación y no entrar en los méritos del asunto ante su consideración. Íd. Ello ya que, "en el ámbito administrativo, al igual que en el foro judicial, no existe discreción para asumir jurisdicción donde no la hay". Íd.

Asimismo, la presentación prematura o tardía de un recurso administrativo o de revisión judicial priva insubsanablemente de jurisdicción y autoridad al foro ante el cual se recurre. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). Tales recursos carecen de eficacia jurídica y no producen efecto alguno, pues al momento de su presentación el foro carece de competencia legal

para atenderlos. Íd. Por ello, tanto las agencias administrativas como los tribunales revisores pueden desestimar motu proprio los recursos prematuros o tardíos por falta de jurisdicción.

**-D-**

Nuestro ordenamiento jurídico exige que, antes de que un tribunal se pronuncie sobre los méritos de una controversia, esta se encuentre madura para adjudicación judicial, como parte de los requisitos de justiciabilidad. *PNP v. Carrasquillo*, 166 DPR 70, 74 (2005). Un asunto no es justiciable cuando: se trata de resolver una cuestión política; cuando una de las partes no tiene capacidad jurídica para promover el pleito; cuando después de comenzado, hechos posteriores lo convierten en académico; cuando las partes buscan obtener una opinión consultiva; o cuando se promueve un pleito que no está maduro. Íd.

La madurez de un pleito se enfoca en la proximidad temporal del daño. *Com. de la Mujer v. Srio. de Justicia*, 109 DPR 715, 722 (1980). Para determinar si una controversia carece de madurez, los tribunales deben evaluar si la controversia sustantiva es apropiada para adjudicación judicial y si el daño alegado es lo suficientemente concreto e inmediato como para justificar la intervención del foro. Íd. Asimismo, la madurez no depende de la etapa procesal en la que se presenta el reclamo, sino del momento en que la controversia está suficientemente definida para revisión judicial. *Aguilú Delgado v. Puerto Rico Parking System*, 122 DPR 261, 266 (1988). Cuando alguno de estos elementos no se satisface, la controversia no está madura y debe desestimarse. Es decir, los tribunales están obligados a abstenerse de intervenir, pues carecen de autoridad para adjudicar controversias que no han alcanzado el grado de concreción requerido por la doctrina de la madurez.

**-E-**

La Ley Núm. 161-2009, *supra,* establece de forma expresa y categórica los requisitos de notificación que rigen la presentación de una solicitud de revisión administrativa ante la División de Revisiones Administrativas. En particular, el Art. 11.7 del referido estatuto, 23 LPRA sec. 9021s, dispone que la parte recurrente debe utilizar el Sistema Unificado de Información para presentar electrónicamente el recurso y, mediante ese mismo mecanismo, notificar simultáneamente a la Oficina de Gerencia de Permisos, a la Junta Adjudicativa, a los municipios autónomos correspondientes o al Profesional Autorizado, según aplique. Además de dicha notificación electrónica, la ley impone el deber adicional de notificar copia de la solicitud de revisión administrativa a las partes y a los interventores dentro de un término de cuarenta y ocho (48) horas desde su presentación, ya sea por correo certificado con acuse de recibo o por cualquier otro mecanismo autorizado por reglamento.

La propia ley es inequívoca al disponer que la notificación oportuna constituye un requisito de carácter jurisdiccional, cuyo cumplimiento no solo es indispensable para que la División de Revisiones Administrativas pueda ejercer su autoridad, sino que también debe ser debidamente certificado y evidenciado ante dicho foro. Íd. El incumplimiento con este requisito priva a la División de jurisdicción para atender la revisión administrativa. Íd.

En armonía con lo anterior, el Reglamento Conjunto desarrolla y detalla el mecanismo de notificación aplicable. Su Sección 11.1.2.4, reitera que la parte recurrente debe utilizar el SUI para notificar simultáneamente a las entidades concernidas al momento de presentar el recurso electrónicamente. Asimismo, impone la obligación de notificar copia de la solicitud a las demás partes y a los interventores dentro del término perentorio de

cuarenta y ocho (48) horas, permitiendo que dicha notificación se realice por correo postal, correo electrónico o de manera personal. Íd.

El Reglamento también establece los medios para acreditar el cumplimiento con dicho deber. Cuando la notificación se efectúe por correo certificado, el recurrente debe cargar al sistema los acuses de recibo dentro de los cinco (5) días siguientes a su recepción. Íd. Por su parte, cuando la notificación se realice por correo regular, electrónico o personalmente, el recurrente está obligado a certificar que la notificación fue efectuada y a cargar dicha certificación al expediente dentro del término de cinco (5) días desde que se realizó. Íd. Al igual que la ley habilitadora, el Reglamento enfatiza que la notificación oportuna es un requisito jurisdiccional, indispensable para la válida consideración del recurso administrativo. Íd.

III.

De entrada, cabe precisar que, al ejercer nuestra función revisora, debemos recordar que las decisiones de las agencias administrativas gozan de una presunción de legalidad y corrección, por lo que corresponde a la parte que las impugna demostrar que la agencia actuó fuera de los poderes delegados, erró en la aplicación del derecho, incurrió en arbitrariedad o lesionó derechos constitucionales fundamentales. *Rolón Martínez v. Supte. Policía*, supra, pág. 35; *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, supra. De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. *Torres Rivera v. Policía de PR*, supra, págs. 627-628.

En su primer señalamiento de error, los recurrentes argumentaron que, la OGPe actuó sin jurisdicción al resolver el recurso de revisión administrativa presentado por la Oficina de

Permisos fuera de los noventa (90) días jurisdiccionales provisto en la Ley Núm. 161-2009, *supra* y en el Reglamento Conjunto, *supra*. No le asiste la razón. *Veamos.*

Conforme a la Sección 11.1.2.6 del Reglamento Conjunto, *supra*, y al Art. 11.8 de la Ley Núm. 161-2009, *supra*, la División de Revisiones Administrativas de la OGPe cuenta con un término de noventa (90) días naturales para adjudicar una solicitud de revisión administrativa acogida, término que puede ser prorrogado por treinta (30) días adicionales en casos excepcionales. Ambos cuerpos normativos disponen expresamente que solo cuando la agencia no emite una determinación dentro de ese término máximo de ciento veinte (120) días es que pierde jurisdicción para continuar atendiendo el asunto.

Del expediente administrativo surge claramente que la OGPe acogió la solicitud de revisión administrativa y notificó oportunamente la prórroga de treinta (30) días del término adjudicativo, conforme a la facultad que le confiere la ley. En específico, el 17 de septiembre de 2025, la OGPe emitió un *Señalamiento de Vista de Revisión Administrativa* en el que expresó que estaría prorrogando el término original de noventa (90) días por un periodo adicional de treinta (30) días, expresando como fundamento la cantidad de casos atendidos por la División. Dicha determinación fue notificada a las partes y se ajustó a lo dispuesto por el ordenamiento jurídico aplicable.

Posteriormente, la OGPe emitió y notificó su *Resolución de Revisión Administrativa* el 6 de noviembre de 2025, es decir, dentro del término máximo de ciento veinte (120) días autorizado por ley. Por consiguiente, al momento de adjudicar la controversia, la OGPe conservaba jurisdicción plena para resolver el recurso ante su consideración. Por estas razones, el primer señalamiento de error no se cometió.

Por otro lado, en su segundo señalamiento de error, los recurrentes indicaron que, la OGPe erró y actuó sin jurisdicción, al determinar que el recurso de revisión administrativa era prematuro. Sostuvo que dicha determinación le brindaba una nueva oportunidad a la Oficina de Permisos para presentar su revisión administrativa a pesar de que la desestimación no era un asunto subsanable por haberse incumplido con la obligación jurisdiccional de notificación. No nos persuade este planteamiento. *Veamos.*

En el caso de autos, la OGPe desestimó la solicitud de revisión administrativa al concluir que la controversia era prematura y que carecía de jurisdicción para atenderla en los méritos, precisamente por incumplimientos procesales de carácter jurisdiccional. Particularmente, la OGPe correctamente determinó que la omisión del nombre de una de las copropietarias del inmueble en el permiso de construcción y la consiguiente falta de notificación oportuna a esta parte afectada impidieron que la controversia estuviera madura para adjudicación, en violación a los principios de debido proceso de ley. Tal determinación se encuentra plenamente alineada con la doctrina de madurez, que exige que las controversias estén suficientemente definidas, con hechos concretos y partes claramente identificadas, antes de la intervención adjudicativa. *Com. de la Mujer v. Srio. de Justicia*, supra, pag. 722; *PNP v. Carrasquillo*, supra, pág. 74.

Lejos de subsanar el defecto o permitir su corrección dentro del mismo procedimiento, la OGPe reconoció que la falta de notificación a una parte indispensable —requisito expresamente catalogado como jurisdiccional por el Art. 11.7 de la Ley Núm. 161-2009, *supra*, y la Sección 11.1.2.4 del Reglamento Conjunto, *supra*— lo privó para continuar con el trámite. Recordemos que, cuando una agencia administrativa carece de jurisdicción, su única actuación válida es así declararlo y abstenerse de adjudicar los

méritos. *Pérez López v. CFSE*, supra, pág. 883. En consecuencia, no hubo concesión indebida ni actuación *ultra vires* alguna al declarar la prematuridad del recurso. La OGPe actuó conforme a su deber indelegable de auscultar su jurisdicción y resolver con carácter preferente los planteamientos jurisdiccionales. En virtud de lo antes expuesto, el segundo señalamiento de error no se cometió.

Asimismo, no nos convence el argumento del tercer señalamiento de error en el cual los recurrentes sostienen que la OGPe incurrió en una actuación *ultra vires* al ordenar al señor Rossy que corrigiera el permiso de construcción para incluir a todos los titulares del derecho real conforme a la escritura pública obrante en el expediente. Dicha orden no constituyó una adjudicación en los méritos ni una continuación indebida del procedimiento desestimado, sino una actuación razonable y accesoria dirigida a corregir una deficiencia sustantiva en un documento administrativo cuya validez fue cuestionada.

Ciertamente, resulta incontrovertible que, el permiso de construcción núm. 2025-622445-PCOC-316742, generado por el señor Rossy, consignaba como único dueño al señor Aponte, tanto en el propio pergamino del permiso como en la información registrada SBP, donde este figuraba como dueño del Proyecto y dueño del Solar. Por lo tanto, no existe duda alguna de que en ningún encasillado del permiso o de la información registrada en el SBS se incluyó a la señora Hernández como co-dueña de la propiedad. En vista de lo anterior, la OGPe actuó dentro del marco de sus facultades regulatorias y fiscalizadoras al procurar que los permisos emitidos reflejen información correcta y completa, salvaguardando así la integridad del sistema de permisos y evitando futuras controversias igualmente inmaduras. Lejos de ser arbitraria o ilegal, dicha actuación fue compatible con la política pública que informa la Ley Núm. 161-2009, *supra*, y merece deferencia judicial.

En ausencia de evidencia que rebata la presunción de legalidad y corrección que cobija la actuación administrativa, ni demostración de error de derecho, arbitrariedad o violación a derechos constitucionales fundamentales, concluimos que la OGPe actuó dentro de los poderes que le fueron delegados y conforme al estado de derecho vigente. Por consiguiente, procede confirmar la *Resolución de Revisión Administrativa* emitida por la OGPe.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones